■ DEAN C. TOMANELLI et al., Respondents-Appellants, v LIZDA REALTY, LTD., Appellant-Respondent.—Levine, J. Cross appeals (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Spindel, J.H.O.), entered January 19, 1990 in Orange County, upon a decision of the court in favor of plaintiffs.

This appeal arises from a judgment awarding plaintiffs $25,714 for damages resulting from defendant's breach of contract. The contract between the parties, dated July 13, 1985, provided for the purchase by plaintiffs of a condominium to be constructed by defendant in the Village of Harriman, Orange County. The purchase price of $80,500 included a $4,025 down payment and a $76,475 purchase money mortgage, which plaintiffs were to obtain in accordance with the terms of the contract. Paragraph 12 of the contract provided in relevant part that "[i]f * * * [plaintiffs] are not approved by a lending institution designated by [defendant] within 45 days from the date hereof, then this Agreement shall be deemed cancelled * * * except that [defendant] reserves the right for a period of thirty days to designate another lending institution or to grant the mortgage loan itself".

Plaintiffs did not apply for a mortgage within the 45-day period specified in the contract. By letter dated September 24, 1985, the office manager from Lexington Hill, the condominium complex owned by defendant, advised plaintiffs that it was too early to apply for a mortgage because the construction would not be complete until March 1986. Subsequently, in January 1986, plaintiffs were contacted by Superior Funding Corporation, an intermediary used by defendant for preparation of mortgage applications and submission to its designated lending institution. Following a lengthy application process, including a change of lender and an adjustment in the amount of the mortgage, plaintiffs received a mortgage commitment from Embanque Capital Corporation in June 1986. Meanwhile, on June 4, 1986, plaintiffs were notified by defendant that the contract had been canceled due to their inability to obtain a mortgage within the contractual time limit.

Plaintiffs then commenced this action for breach of contract seeking, *inter alia,* compensatory and punitive damages. The complaint alleged essentially that defendant used its control of the mortgage process to delay plaintiffs from obtaining a loan commitment, thereby enabling it to cancel the contract. At the conclusion of a nonjury trial, Supreme Court awarded

plaintiffs compensatory damages, but dismissed their claim for punitive damages. These cross appeals followed.

Defendant's first contention on appeal is that Supreme Court improperly based its decision largely upon inadmissible hearsay testimony. However, upon reviewing the trial record and the court's decision, we find defendant's assignments of error to be unpersuasive. Defendant waived any objection to at least one disputed statement by failing to object on hearsay grounds (see, Forrester v Port Auth., 166 AD2d 181), and various other out-of-court statements were correctly admitted into evidence because they were either relevant to the state of mind of one of the parties or because they constituted admissions (see, Richardson, Evidence §§ 205, 209-210, at 181-183, 187 [Prince 10th ed]; see also, Veras v Truth Verification Corp., 87 AD2d 381, affd 57 NY2d 947; Iannielli v Consolidated Edison Co., 75 AD2d 223, 228). As to defendant's remaining hearsay objections, we are satisfied that, to the extent that Supreme Court improperly allowed the challenged testimony into evidence, such error was harmless since the result would have been the same had that testimony been excluded (see, Moore v Maggio, 96 AD2d 738).

Defendant next claims that Supreme Court erred in accepting various letters and documents into evidence. While we agree with defendant that plaintiffs' 1986 bank statements and the loan commitment from Embanque were improperly admitted in the absence of testimony from any personnel from plaintiffs' bank or Embanque establishing the necessary foundation for business records (see, CPLR 4518 [a]; Matter of Leon RR, 48 NY2d 117, 122), we again conclude that such error was harmless since the court's decision was amply supported by other proof in the record. Further, we reject defendant's contention that various correspondence from plaintiffs' counsel to defendant were incorrectly received into evidence. Through the testimony of plaintiffs' counsel, the letters written and sent by her to defendant in the ordinary course of business were sufficiently established as business documents, thus falling under that exception to the hearsay rule (see, CPLR 4518 [a]; Matter of Rathborne, 111 AD2d 335).

Also unavailing is defendant's assertion that Supreme Court erred in concluding that plaintiffs established a breach of contract by defendant. Although defendant urges that it was plaintiffs who breached the contract by failing to secure financing within the requisite period, thus giving rise to a right of rescission (citing Grace v Nappa, 46 NY2d 560, 566), this contention was not born out by the record. We agree with

Supreme Court that the testimony and documentary evidence demonstrated that defendant did not intend the 45-day period set forth in the contract to commence from July 13, 1985. Not only did the September 1985 letter from the office manager of Lexington Hill effectively nullify the 45-day requirement, but at no time did defendant designate an alternative 45-day period. Both plaintiffs testified that after submitting their mortgage application in February 1986, they eventually learned that it had been transferred to Embanque, but that they had no contact with defendant until June 4, 1986, when it notified them by letter that their contract had been canceled due to their failure to obtain a mortgage commitment. However, Nancy Murasso, a former Embanque employee, testified that plaintiffs' mortgage application was never denied and that defendant's president attempted to convince her to withdraw plaintiffs' mortgage commitment. Plaintiffs also testified that, as of June 26, 1986, they had the required down payment and mortgage commitment, but were prevented from closing solely because of defendant's inaction.

In view of the foregoing proof and recognizing that Supreme Court was in the best position to assess the witnesses' credibility *(see, D. C. Leathers v Gelmart Indus.,* 125 AD2d 738, 739), we conclude that the judgment in favor of plaintiffs should be upheld. However, we find no support for Supreme Court's determination that interest should be calculated from August 28, 1985. In a contract action interest is to be computed from the time of the breach *(see,* CPLR 5001 [b]) which, in this case, was July 14, 1986, the date plaintiffs attempted to close.

As a final matter, Supreme Court correctly dismissed plaintiffs' punitive damages claim since the instant action did "not seek to vindicate a public right or deter morally culpable conduct" *(Halpin v Prudential Ins. Co.,* 48 NY2d 906, 907).

Casey, J. P., Weiss, Mikoll and Crew III, JJ., concur. Ordered that the judgment is modified, on the law, with costs to plaintiffs, by amending the date from which interest is to be computed from August 28, 1985 to July 14, 1986, and, as so modified, affirmed.